### BATH.

Mode of ascertaining the number of ratable polls in a town, when an election is controverted on the ground of an insufficiency thereof.

Where an election was controverted, on the ground of a deficiency of ratable polls, the sitting members were required to lay before the committee on elections, and to furnish the petitioners with, a list of persons whom they alleged to be ratable polls; and the petitioners, within a reasonable time, afterwards, to furnish the members with a list of such persons thereon, as they alleged not to be ratable polls.

THE election of Samuel Davis, William Webb, and Jonathan Hyde, the members returned from the town of Bath, and who were elected by a general ticket, at one balloting, was controverted by Joshua Wingate, Jr., and others, on the ground, that the town of Bath, on the first day of May, 1809, contained no more than five hundred and sixty-four ratable polls, and therefore, was constitutionally entitled to elect but *two* representatives for that year.[1]

The committee on elections, to whom the memorial of the said Wingate and others was referred, at the June session, reported a reference of the subject, to the next session;[2] and ordered that the members from Bath should lay before them, at that time, a list of those persons in said town, whom they alleged to be ratable polls; that the said members should also furnish the petitioners with a copy thereof; and that the petitioners should, within a reasonable time, furnish the said members with a list of such persons thereon, as they alleged not to be ratable polls; in order, that the committee might determine, at the next session, upon such evidence, as the parties might then produce, in reference to the polls objected to, whether the town of Bath was entitled to three representatives or not.

The reference was agreed to by the house, and in pursuance of the order of the committee, the list and copy required were furnished by the members, and the objectionable names given by the petitioners.

At the January session, depositions were produced before

---

[1] 30 J. H. 29.          [2] Same, 123.

the committee, to prove who, on the disputed list, were or were not ratable polls, and the committee, upon a consideration thereof, reported, that the town of Bath contained a sufficient number of ratable polls to entitle it to send three representatives. The report was agreed to.[1]

---

## DIGHTON.

An election being controverted on the ground of an insufficiency of ratable polls, and the selectmen having neglected to furnish the petitioners with a list of the polls, agreeably to an order of the committee on elections, the election was invalidated, on presumptive evidence of the insufficiency.

Where members are elected, at separate ballotings,[2] the elections of those only, who exceed the number to which the town is entitled, are affected by an insufficiency of ratable polls.

THE election of George Walker, one of the two members returned from the town of Dighton, was controverted by Joseph Atwood and others, on the ground, that the number of ratable polls in said town did not entitle it to two representatives.[3]

The petition was accompanied by an affidavit of James Briggs, one of the assessors of Dighton, for the year 1808, from which it appeared, that the number of polls, rated on the tax bills for that year, was two hundred and ninety-eight, and that in the same tax bills, forty-three persons were rated for their estates only, their polls being excused on account of age and infirmity: that the aggregate of these two numbers, three hundred and forty-one, was considered by the assessors, as including all the male inhabitants of the town of Dighton, that were ratable on the first day of May, 1808, either for their polls or property: and that in his opinion, the number of ratable polls in 1809, differed but little from that of the year preceding.

The petitioners also furnished an affidavit of James Gooding, 2d., in which he testified, that on the 23d of May, 1809,

[1] 30 J. H. 286.

[2] It is not distinctly stated, in the case, that the members were elected at separate ballotings; but this is clearly implied in the conclusion of the report.

[3] 30 J. H. 38, 63.